E-FILED
Friday, 23 July, 2021  10:35:58 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRADLEY JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case: |
| | ) | |
| ROB JEFFRIES, GLENN AUSTIN, | ) | |
| KATIE FITZPATRICK and JANEL FORD | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COMES NOW the Plaintiff, Bradley Jenkins ["Jenkins"], and for his causes of action

against the Defendants, Rob Jeffries ["Jeffries"], Glenn Austin ["Austin"], Katie Fitzpatrick

["Fitzpatrick"] and Janel Ford ["Ford"], states as follows:

### **JURISDICTION**

The jurisdiction of this Court is invoked pursuant to the terms of Title 28, United States

Code, Sections 1331 and 1337, together with Title 42, United States Code, Sections 1983 and

1988. This is a civil action arising under the laws of the United States. Specifically, this is an

action brought in furtherance of a certain Act of Congress which guarantees to citizens of the

United States protections against the acts of public officers which infringe upon their rights

under the Constitution of the United States.

The venue of this Court to entertain the issues raised in this case is appropriate by virtue

of Title 28, United States Code, Section 1391(b) since the Defendants engaged in their official

activities within the judicial district of this Court and the claims giving rise to the above

captioned proceeding did occur within the judicial district of this Court.

## PARTIES

1.   That Jenkins is an adult resident of Christian County, Illinois.  At all times relevant to this proceeding, he was employed by the Illinois Department of Corrections ["Department"] as a correctional lieutenant at the Logan Correctional Center ["Center"].

2.   That the Department is an agency of state government.  Among other things, the Department operates and maintains correctional centers throughout the State of Illinois and provides various correctional services.  At all times relevant to the proceeding, the Department operated the Center and employed individuals who worked at the Center.

3.   That at all times relevant to the proceeding, Jeffries was the Acting Director of the Department.  He is now the Director.  In that position he participated in making decisions with respect to personnel matters involving employees of the Department.  He is named in this proceeding both in his individual and, for purposes of implementing equitable relief, his official capacities.

4.   That Austin, at all times relevant to this proceeding, was employed by the Department and served as the Warden of the Center.  In his position, he participated in making decisions with respect to personnel matters involving employees of the Department.  He is named in this proceeding both in his individual and, for purposes of implementing equitable relief, his official capacities.

5.   That Fitzpatrick, at all times relevant to this proceeding, was a human resource officer at the Center and in that capacity participated in making personnel decisions as an employee review officer.  She is named in this proceeding both in her individual and, for purposes of implementing equitable relief, her official capacities.

6.  That Ford was, at all times relevant to this proceeding, the Director of the Illinois Department of Central Management Services ["CMS"].  In that position she approved decisions with respect to the discharge of state employees working for agencies under the jurisdiction of the Governor.  She is named in this proceeding both in her individual and, for purposes of implementing equitable relief, her official capacities.

## ALLEGATIONS COMMON TO ALL COUNTS

7.  That in June of 2019 Jenkins was employed by the Department as a correctional lieutenant assigned to the Center.

8.  That Jenkins began his employment with the Department in 2010 as a correctional officer and was promoted to the rank of correctional lieutenant on March 16, 2016.

9.  That throughout the course of his employment, Jenkins performed his duties in a manner which satisfied the reasonable expectations which the Department had for someone holding his position.  In this respect he:  a) advanced to the rank of lieutenant; b) consistently received good performance reviews; and c) had a good record of attendance.

10.  That in the spring of 2019 Jenkins was married to Allissa L. Martin ["Allissa"].  At that time, she was also employed as a correctional officer.  She was well liked by both the correctional staff and administrators and had a large network of friends who worked at the Center.

11.  That on June 2, 2019 Allissa died as the result of a fall from the upper floor of a parking ramp in St. Louis, Missouri.

12.  That on June 2, 2019 Jenkins was arrested on charges of criminal assault arising out of the death of his wife in St. Louis, Missouri.  He was incarcerated in the St. Louis City Jail

from June 2, 2019 through June 7, 2019.  Upon his release from incarceration, he was emotionally dysfunctional because of the death of his wife.  Eventually, the criminal charges maintained against Jenkins were dismissed.  Since that time, no further effort to prosecute Jenkins in connection with the death of his wife has occurred.

13.  That between June 2, 2019 and June 12, 2019 Jenkins did not report to work.  When he was incarcerated, he was unable to communicate with the Department.  Because of the emotional distress he was experiencing over his wife's death, after he was released he was not reasonably able to communicate.

14.  That during the period of Jenkins' incarceration his father regularly reported to officials at the Center.  In this respect he explained that Jenkins was not able to report to work because of the death of his wife and his incarceration.  Eventually, he was informed by Center officials that he need not continue to report to the Center about Jenkins' situation.

15.  That subsequent to June 2, 2019 many employees at the Center expressed in various ways outrage over the death of Allissa and their belief that Jenkins' conduct led to her death.

16.  That on June 13, 2019 Fitzpatrick and other officials at the Center initiated a disciplinary proceeding against Jenkins complaining he failed to report for work between June 2, 2019 and June 12, 2019 notwithstanding the efforts of Jenkins' father as explained in paragraph 14 above.

17.  That at times relevant to this case it was a practice for a member of the Center's staff to contact a correctional employee who neither:  1) reported to work; nor 2) gave previous notice to the Center that he would not be at work.  This practice was done in order to find out why the employee was absent and minimize the risk that discipline would be taken against the employee.

18.  That notwithstanding the practice described in paragraph 17 above no effort was made to contact Jenkins as had been the practice with other employees.

19.  That on July 26, 2019 the Director of CMS, at the request of the Defendants, terminated the employment of Jenkins with the Department.

20.  That had Jenkins not been arrested and incarcerated because of the death of his wife he would not have been terminated.

## COUNT I

For his cause of action against Jeffries, Jenkins states as follows:

1. - 20.  That for paragraphs 1 through 20 of Count I, Jenkins incorporates paragraphs 1 through 20 from above.

21.  That the actions complained of in this Count were undertaken by Jeffries in his capacity as the Director of the Department.  As such, his actions were under color of law.

22.  That at times relevant to this case Jenkins was the member of a distinct and clearly identifiable class of individuals, to wit:  public employees who were charged, but not convicted, of serious criminal misconduct.

23.  That Jeffries, at the recommendation of Fitzpatrick and Austin, approved the Department's termination of Jenkins because of Jenkins' membership in the class referred to in paragraph 22 above without any compelling state interest warranting that action contrary to Jenkins right under the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

24.  That as a result of Jeffries' actions Jenkins lost his employment with the Department and the salary and benefits he received through that employment.  He also suffered mental

distress, emotional distress, embarrassment and the loss of enjoyment of life.

## COUNT II

For his cause of action against Austin, Jenkins states as follows:

1. - 20.  That for paragraphs 1 through 20 of Count II, Jenkins incorporates paragraphs 1 through 20 from above.

21.  That the actions complained of in this Count were undertaken by Austin in his capacity as the Warden of the Center.  As such, his actions were under color of law.

22.  That at times relevant to this case Jenkins was the member of a distinct and clearly identifiable class of individuals, to wit:  public employees that were charged, but not convicted, of serious criminal misconduct.

23.  That Austin sought approval for Jenkins' termination from employment with the Department because of his membership in the class described in paragraph 22 above without any compelling state interest warranting that action contrary to Jenkins' right under the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

24.  That as a result of Austin's actions Jenkins lost his employment with the Department and the salary and benefits he received through that employment.  He also suffered mental distress, emotional distress, embarrassment and the loss of enjoyment of life.

## COUNT III

For his cause of action against Fitzpatrick, Jenkins states as follows:

1. - 20.  That for paragraphs 1 through 20 of Count I, Jenkins incorporates paragraphs 1 through 20 from above.

21.  That the actions complained of in this Count were undertaken by Fitzpatrick in her

capacity as the human resource officer at the Center.  As such, her actions were under color of law.

22.  That at times relevant to this case Jenkins was the member of a distinct and clearly identifiable class of individuals, to wit:  public employees who were charged, but not convicted, of serious criminal misconduct.

23.  That Fitzpatrick recommended and sought approval for Jenkins' termination because of his membership in the class described in paragraph 22 above without any compelling state interest warranting that action contrary to Jenkins' right under the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

24.  That as a result of Fitzpatrick's actions Jenkins lost his employment with the Department and the salary and benefits he received through that employment.  He also suffered mental distress, emotional distress, embarrassment and the loss of enjoyment of life.

## COUNT IV

For his cause of action against Ford, Jenkins states as follows:

1. - 20.  That for paragraphs 1 through 20 of Count I, Jenkins incorporates paragraphs 1 through 20 from above.

21.  That the actions complained of in this Count were undertaken by Ford in her capacity as the Director of CMS.  As such, her actions were under color of law.

22.  That at times relevant to this case Jenkins was the member of a distinct and clearly identifiable class of individuals, to wit:  public employees who were charged, but not convicted, of serious criminal misconduct.

23.  That Ford, in reliance upon the recommendation of Jeffries, Austin and Fitzpatrick,

terminated Jenkins from his state employment because of his membership in the class described in paragraph 22 above without any compelling state interest warranting that action contrary to Jenkins' right under the Equal Protection Clause of the Fourteenth Amendment to the Constitution.

24.  That as a result of Ford's actions Jenkins lost his employment with the Department and the salary and benefits he received through that employment.  He also suffered mental distress, emotional distress, embarrassment and the loss of enjoyment of life.

WHEREFORE, Jenkins respectfully requests that this Court enter judgment in his favor and against each of the Defendants and provide the following relief:

A.  Enter a declaratory judgment determining that the actions of the Defendants complained of in this complaint are unlawful in violation of the provisions of 42 U.S.C. § 1983 and 1988 and issue a mandatory injunction against the Defendants to refrain from engaging in any action with respect to Jenkins which are prohibited under the terms of the foregoing laws;

B.  Issue a mandatory injunction directing the Defendants to return Jenkins to employment with the Department in the position he would have held had he not been terminated with all employment duties, responsibilities, salaries, benefits and rights attendant to that position;

C.  Award Jenkins damages sufficient to compensate him for any economic losses suffered as a result of the conduct as alleged in this Complaint;

D.  Assess against the Defendants the costs and expenses incurred by Jenkins in maintaining the above captioned proceeding together with the reasonable attorney fees incurred by him in prosecuting the above captioned cause;

E.  Assess against the Defendants and in favor of Jenkins such compensatory and

exemplary damages as may be permitted by law; and

F.  Provide such other relief as the Court deems to be equitable and just.

THE PLAINTIFF, BRADLEY JENKINS, RESPECTFULLY REQUESTS THAT ALL ISSUES
RAISED IN THIS PROCEEDING WHICH MAY BY LAW BE TRIED BEFORE A JURY BE
TRIED BY A JURY.

Bradley Jenkins, Plaintiff

By:   s/ James P. Baker
       James P. Baker
       Bar Number: 0097802
       Baker, Baker & Krajewski, LLC
       415 South Seventh Street
       Springfield, Illinois 62701
       Telephone: (217) 522-3445
       Facsimile: (217) 522-8234
       E-mail:  jpb@bbklegal.com
       (Complaint/ jenkins brad federal 072221)