### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| **BRADLEY JENKINS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 21-cv-3172 |
| ) | |
| **ROB JEFFREYS, et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on the Motion to Dismiss filed by Defendants Rob Jeffreys, Glen Austin, Katie Fitzpatrick, and Janel Forde.  See d/e 9.  Because Plaintiff Bradley Jenkins' Complaint fails to state a claim for relief under the Equal Protection Clause, Defendants' motion is GRANTED.

### I.  BACKGROUND

The Court construes the complaint in the light most favorable to Mr. Jenkins, accepting all well-pleaded allegations as true and taking all reasonable inferences in his favor.  Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).

Mr. Jenkins is a former employee of the Illinois Department of Corrections (IDOC). He joined IDOC in 2010 as a correctional officer. By 2016, Mr. Jenkins had risen to the rank of lieutenant. Mr. Jenkins was, by all appearances, a model officer. So too was Mr. Jenkins' wife, Allissa Martin, who worked alongside her husband at IDOC's Logan Correctional Center.

Mr. Jenkins and Ms. Martin were married in the spring of 2019. On June 2, 2019, Ms. Martin fell to her death from an upper floor of a St. Louis parking garage. St. Louis police arrested Mr. Jenkins shortly thereafter. From June 2 to June 7, Mr. Jenkins was held in the St. Louis City Jail. The criminal-assault charges against him eventually were dropped.

Mr. Jenkins never returned to work after his release from jail. Nor did he advise anyone at Logan of his absence. That task fell to Mr. Jenkins' father, who relayed to "officials at the Center" that Mr. Jenkins "was not able to report to work because of the death of his wife" and his subsequent detention. See Compl., d/e 1, at ¶ 14. At some point, Logan officials told the elder Jenkins that he "need not continue to report . . . about Jenkins' situation." Id.

That was because, Mr. Jenkins alleges, Logan had made up its collective mind. In the aftermath of Ms. Martin's fatal fall, "many [Logan employees] expressed in various ways . . . their belief that Jenkins' conduct led to her death." Id. ¶ 15. It was "a practice" among Logan staff "to contact [an employee] who neither 1) reported to work . . . nor 2) gave previous notice to the Center that he would not be at work." Id. ¶ 17. Yet "no effort was made to contact Jenkins as had been the practice with other employees." Id. ¶ 18.

On June 13, 2019, Defendant Katie Fitzpatrick—then a human-resource officer at Logan—initiated disciplinary proceedings against Mr. Jenkins. A little more than a month later, Defendant Janel Forde—then Director of the Illinois Department of Central Management Services—terminated Mr. Jenkins' employment "at the request of the Defendants." Id. ¶ 19. Ms. Fitzpatrick's complaint concerned Mr. Jenkins' failure to report, not his alleged role in Ms. Martin's death. Mr. Jenkins alleges that, had he "not been arrested and [detained] because of the death of his wife," he "would not have been terminated." Id. ¶ 20.

Mr. Jenkins brought this suit under 42 U.S.C. § 1983. He alleges that Defendants fired him because he belonged to "a distinct and clearly identifiable class of individuals, to wit: public employees who were charged, but not convicted, of serious misconduct." See id. ¶ 22. Mr. Jenkins argues that this denied him the equal protection of the laws guaranteed by the Fourteenth Amendment.

In Count I, Mr. Jenkins alleges that Defendant Rob Jeffreys, then IDOC's Acting Director, "approved the Department's termination of Jenkins because of" Mr. Jenkins' class membership. Id. at 5. In Count II, Mr. Jenkins alleges that Defendant Glen Austin, then Logan's Warden, "sought approval for Jenkins' termination" for the same reason. Id. at 6. Mr. Jenkins further alleges that Ms. Fitzpatrick began disciplinary proceedings against him (Count III) and Ms. Forde effected his termination (Count IV) on the same discriminatory basis. See id. at 6–8.

Mr. Jenkins claims that Defendants' actions cost him his "employment with the Department," the attendant "salary and benefits," and mental and emotional distress. See id. at 6. Mr. Jenkins seeks both money damages and equitable relief—including

his reinstatement to IDOC—on each of Counts I through IV.  He sues the Defendants in their individual and official capacities.

Defendants now move to dismiss Mr. Jenkins' complaint under Federal Rule of Civil Procedure 12(b)(6).  See Defs.' Mot. to Dismiss, d/e 9.  Defendants argue that Mr. Jenkins' allegations do not implicate a recognized Fourteenth Amendment right and, therefore, fail to state a claim for relief.  See Defs.' Mem., d/e 10, at 4–5.  In the alternative, Defendants argue that they are entitled to qualified immunity on all four counts.  See id. at 5–7.

## II. JURISDICTION AND VENUE

Mr. Jenkins brings this civil rights action pursuant to 42 U.S.C. § 1983.  Accordingly, this Court has federal-question jurisdiction over his claims.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is proper because a substantial part of the events or omissions giving rise to Mr. Jenkins' claims occurred within this District.  See 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

In considering a motion to dismiss under Rule 12(b)(6), this Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. Id. But the complaint still must set forth facts that plausibly demonstrate a claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Reciting the elements of a cause of action or supporting claims with conclusory statements are insufficient to state a cause of action. Id.

# IV. ANALYSIS

Mr. Jenkins claims that Defendants violated the Equal Protection Clause of the Fourteenth Amendment when they terminated his employment with IDOC.  Specifically, in each of Counts I through IV, Mr. Jenkins alleges that Defendants personally sought and sanctioned his dismissal by reason of his status as a "public employee[] that [was] charged, but not convicted, of serious criminal misconduct."  See d/e 1 at 6.

**A.   Mr. Jenkins Fails to State a Claim for Relief.**

Defendants first argue that Mr. Jenkins' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  To survive, Mr. Jenkins must have stated a claim for relief that is plausible on its face.  Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599, 602–603 (7th Cir. 2009).

Mr. Jenkins' four-count complaint centers on a novel theory. He alleges that Defendants fired him by reason of his membership in a class of "public employees that were charged, but not convicted, of serious criminal misconduct."  See d/e 1 at 6. Defendants do not challenge these claims as unsupported.  Rather, Defendants argue that Mr. Jenkins' claims must be dismissed

because he cannot prove "that his 'class' . . . is a protected class" under the Equal Protection Clause.  See d/e 10 at 4.

The Equal Protection Clause "protects individuals against intentional, arbitrary discrimination by government officials." Lauderdale v. Ill. Dep't of Human Servs., 876 F.3d 904, 909–10 (7th Cir. 2017).  To state a prima facie claim under the Equal Protection Clause, Mr. Jenkins must show that he (1) is a member of a protected class; (2) is otherwise similarly situated to members of an unprotected class; (3) was treated differently by Defendants than were members of the unprotected class; and that (4) Defendants acted with discriminatory intent.  See Word v. City of Chicago, 226 F.3d 558, 564 (7th Cir. 2000).

The Court finds that the law does not recognize Mr. Jenkins' claimed membership in a protected class.  Public employees accused of serious criminal misconduct do not belong to a "suspect class."  See, e.g., Vukadinovich v. Bd. of Sch. Trs. of Michigan City Area Schs., 978 F.2d 403, 414 (7th Cir. 1992) (distinguishing arrest history from "forbidden characteristic[s]" like "race, religion, or gender").  Mr. Jenkins argues that the Equal Protection Clause still extends to Defendants' actions because Illinois law forbids the

use of an arrest record as a basis for termination.  But this theory—first raised in Mr. Jenkins' response briefing, see d/e 14 at 5—still does not state an Equal Protection claim.  A violation of state law, even one that protects disfavored classes, "is not a ground for a federal civil rights suit." Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010).  While Mr. Jenkins may have a viable state-law claim against Defendants, he does not state a cause of action under the Equal Protection Clause.

Even still, discrimination by virtue of a non-suspect classification can violate the Equal Protection Clause, which bars government officials from "arbitrarily and irrationally singl[ing] out one person for poor treatment." Brunson v. Murray, 843 F.3d 698, 705 (7th Cir. 2016).  Such "class-of-one" discrimination "is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." Swanson v. City of Chetek, 719 F.3d 780, 784 (7th Cir. 2013) (cleaned up).  To survive a motion to dismiss, Mr. Jenkins must allege that Defendants (1) intentionally treated him differently from others similarly situated

and (2) did so without any rational basis. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

Mr. Jenkins cannot state a claim for relief under this theory. The first reason is that public employees cannot challenge personnel actions on class-of-one grounds. See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598 (2008). Mr. Jenkins "has presented no reasoned basis to distinguish that authority." O'Gorman v. City of Chicago, 777 F.3d 885, 892 (7th Cir. 2008). And even if it were necessary to conduct a full class-of-one analysis, Mr. Jenkins' claims still would not state a cause of action under the Equal Protection Clause.

The first element of a class-of-one claim—disparate treatment—is not at issue here. Mr. Jenkins need not identify a similarly situated comparator to survive a motion to dismiss. See FKFJ, Inc. v. Vill. of Worth, 11 F.4th 574, 590 (7th Cir. 2021); see also Miller v. City of Monona, 784 F.3d 1113, 1120 (7th Cir. 2015) (collecting cases).

But Mr. Jenkins has not met his burden on the second prong. He alleges that Defendants terminated his employment with animus. However, "a given action can have a rational basis

and be a perfectly logical action for a government entity to take even if there are facts casting it" in a nefarious light.  See Flying J Inc. v. City of New Haven, 549 F.3d 538, 547 (7th Cir. 2008).  "All it takes to defeat [a class-of-one] claim," therefore, "is a conceivable rational basis for the difference in treatment." D.B. ex rel. Kurtis B. v. Kopp, 725 F.3d 681, 686 (7th Cir. 2013), cert. denied, 571 U.S. 1200 (2014).  The Court identifies two.  Mr. Jenkins' complaint, therefore, fails to state a viable claim for relief.  See id.

First, Defendants contend that Mr. Jenkins was fired for missing ten days of work without explanation.  Absence without leave is a sound reason for termination in any context.[1]  Second, a correctional environment cannot abide employees accused of criminal conduct—never mind those who commit it.  So even if Defendants acted with some degree of animus toward Mr. Jenkins, his arrest still provided a rational basis for firing him.  See Dean v. Illinois Dep't of Corr., 2022 WL 826924, at *5 (C.D. Ill. Mar. 18, 2022) ("Here, it is entirely possible to imagine rational and sound

---

[1] As an IDOC employee, Mr. Jenkins presumably enjoyed the benefits of a collective-bargaining agreement, including any limits on IDOC's right of termination.  But whether his firing complied with that agreement is not properly before the Court.

reasons for Illinois to fire a correctional officer who had been arrested twice in as many months."); see generally 20 Ill. Adm. Code 120.30 (2021) (requiring IDOC staff to "conduct themselves in a manner that will not reflect unfavorably on the Department").

**B.     Defendants Are Entitled to Qualified Immunity.**

Defendants also invoke the affirmative defense of qualified immunity on Mr. Jenkins' claims for money damages. Having found that Mr. Jenkins' claims do not implicate a recognized constitutional right, the Court turns briefly to qualified immunity.

Qualified immunity insulates public officials from liability for money damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Van den Bosch v. Raemisch, 658 F.3d 778, 786 (7th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). In evaluating a qualified immunity claim, this Court asks two questions: whether "the facts that a plaintiff has alleged make out a violation of a constitutional right," and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." See id. (cleaned up).

Mr. Jenkins alleges that all four Defendants discriminated against him by reason of his membership in a protected class. As discussed above, see supra Section IV.A, the law does not recognize public employees accused of serious criminal misconduct as comprising a suspect class. See Vukadinovich, 978 F.2d at 414. Because Mr. Jenkins alleges only that he was fired for having been arrested, and because that status does not rise to the level of a suspect class, the allegations here do not "make out a violation of a constitutional right." See Van den Bosch, 658 F.3d at 786. This means that Defendants are immune from Mr. Jenkins' claims.

## V. CONCLUSION

For these reasons, Defendants' Motion to Dismiss (d/e 9) is GRANTED. Plaintiff's Complaint (d/e 1) is DISMISSED WITHOUT PREJUDICE. Mr. Jenkins may file an amended complaint on or before August 2, 2022. Defendants shall answer any amended complaint by no later than August 16, 2022.

**ENTERED: JULY 19, 2022**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**