## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRADLEY JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case:  21-3172 |
| | ) | |
| ROB JEFFRIES, GLENN AUSTIN, | ) | |
| KATIE FITZPATRICK and JANEL FORD | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF THE PLAINTIFF, BRADLEY JENKINS, IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS HIS AMENDED COMPLAINT

### I.  INTRODUCTION

On July 26, 2016  the Director of the Illinois Department of Central Management Services ["CMS"] at the request of the Illinois Department of Corrections ["Department"] terminated Bradley Jenkins ["Jenkins"] from employment with the Department.  At that time, Jenkins had:  1) worked for the Department for nine years; 2) enjoyed a good work record; and 3) advanced to the rank of lieutenant.  At all times, he worked at the Logan Correctional Center ["Center"].

The effort to terminate Jenkins began shortly following his arrest for criminal assault in connection with the death of his wife, a fellow correctional officer at the Center.

In this case Jenkins, pursuant to 42 U.S.C. Section 1983, sues the officials involved in the termination decision.  He claims that he was treated differently and less favorably than other correctional officers because of his arrest contrary to his rights under the Equal Protection Clause of the Fourteenth Amendment of the Constitution.

1

As their initial response to the complaint, the Defendants in their individual capacities sought its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They relied upon two reasons in attacking the complaint. First, they claimed Jenkins did not allege a viable cause of action under the Equal Protection Clause. Second, they claimed entitlement to qualified immunity. On July 19, 2022 this Court granted the Defendant' motion and gave Jenkins leave to file an amended complaint.

This Jenkins did on August 15, 2022.

The Defendants have now filed a motion seeking the dismissal of Jenkins' amended complaint. In support of that motion they assert that he has failed to adequately state a claim for relief under the Equal Protection Clause because: 1) he does not allege membership in a "suspect class" entitled to Fourteenth Amendment protection; 2) as a public employee, Jenkins cannot pursue a class of one claim; and 3) his reliance on the "Illinois Human Rights Act" ["Act"] and the "Personnel Code" is misplaced.[1] They also invoke the protections of the qualified immunity doctrine.

For reasons which follow, Jenkins submits that none of the reasons sets forth sufficient grounds for the dismissal of the amended complaint.

## II.  ARGUMENT

### A)  <u>The Standard For Dismissal Under Rule 12(b)(6).</u>

To survive a motion to dismiss under Rule 12(b)(6) a complaint must provide enough factual information to state a claim for relief that is plausible on its face and raises a right to

---

[1] Jenkins agrees that he cannot maintain a class of one claim in view of the holding in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 170 L.Ed.2d 975 (2008). It is apparent from a reading of the amended complaint that his equal protection claim is not based upon a class of one theory, but rather upon his membership in a  distinct group.

2

relief that is above the speculative level [*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 570, 167 L.Ed.2d 929 (2007); and *Camasta v. Joseph Bank Clothier, Inc.*, 761 F.3d 732, 736 (7th Cir.2014)].

A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the alleged misconduct [*Ashcroft v. Iqbel*, 556 U.S. 662, 678, 173 L.Ed.2d 868 (2009); and *Doe v. Village of Arlington Heights*, 782 F.3d 911, 914 (7th Cir.2015)]. In considering a Rule 12(b)(6) motion all well pleaded facts must be accepted as true and viewed in a light most favorable to the plaintiff [*Doe* at pp.914-915].

### B) The Allegations In The Amended Complaint.

In June of 2019 Jenkins had worked for the Department for the better part of nine years. During that time period, he had:  a) advanced to the rank of lieutenant; b) consistently received good performance reviews; and c) a good record of attendance [¶7-9].

On June 2, 2019 Jenkins, following the death of his wife who also worked as a correctional officer at the Center, was arrested on charges of criminal assault related to her death and incarcerated for five days in the St. Louis City Jail.  During this period, Jenkins' father regularly reported to Center officials the circumstances for Jenkins not reporting to work. Eventually, his father was informed by Center officials that he need not continue reporting Jenkins' absence.  Because of his incarceration, Jenkins was unable to communicate with the Department.  At the time he was released from jail, Jenkins was emotionally dysfunctional because of his wife's death and was incapable of communicating with the Department [¶11-14].

Eventually, the criminal charges against Jenkins were dismissed and no further attempt was made to prosecute him [¶12].

3

Following the death of his wife, many employees at the Center expressed outrage over her death and harbored a belief that Jenkins was responsible for her death.  Prior to her death, she had been popular with both staff and administrators at the Center [¶10,15].

It had been a practice at the Center for a member of its staff to contact an employee who neither reported to work nor gave notice he would not be at work.  This was done to both find out why the employee was absent and minimize the risk that disciplinary action would be taken against the employee.  Among the employees who benefited from this practice were Seth Davis, Jody Burge, Tyler Bartel, Shelby Garrett, Addison Ahort, Eric McNamera, Vincent Dively and Jenkins prior to his arrest.  Jenkins believes that none of the other employees had ever been charged with a serious criminal offense [¶17-20].  Notwithstanding this practice, no effort was made to contact Jenkins following his arrest as was done with other employees.  Instead, on June 13, 2019 a disciplinary proceeding was initiated against Jenkins because of his failure to report to work between June 2, 2019 and June 12, 2019.  This led to Jenkins' termination on July 26, 2019 [¶16, 22].[2]

A reasonable inference which can be drawn from the complaint is that Jenkins' absence from work was not the real reason for his discharge.  Instead, he was terminated because of his arrest relating to the death of his wife.

Treating Jenkins differently and less favorably than others because of his arrest was not rationally related to any compelling state interest because:  a) Jenkins was never convicted of the criminal charge; b) the public policy of the State of Illinois as embodied in the Act prohibits a

---

[2]  The paragraph numbers refer to the paragraphs in each count of the complaint.

state employer from discriminating against an employee based upon an arrest; and c) the policies

of the State of Illinois embodied in both the "Personnel Code" and the rules of CMS have created

a mechanism for handling situations like those presented in this case [¶27 of Counts I through

IV].

**C) The Amended Complaint Adequately Alleges Jenkins' Membership In A Class Protected By The Equal Protection Clause.**

Relying upon this Court's order of July 19, 2022 and the holding in *Vukadinovich v.*

*Board of School Trustees of Michigan Area Schools*, 978 F.2d 403 (7th Cir.1992), the Defendants

assert that Jenkins status as an arrestee does not place him in a class entitled to the protections of

the Equal Protection Clause [pp.3-4]. Jenkins acknowledged that its contention is consistent

with this Court's earlier order.   Respectfully, he believes this Court's analysis was mistaken.

The premise to the Defendants' contention is that if Jenkins was not the member of a

suspect class, he has no protection under the Equal Protection Clause.

The Equal Protection Clause is essentially a direction that the government should treat all

similarly situated persons alike [*Vision Church United Methodist v. Village of Long Grove*, 468

F.3d 975, 1001 (7th Cir.2006)].

While membership in a suspect class or the victim of the denial of fundamental rights

entitled one to the protections of the Fourteenth Amendment, a person who is neither a member

of such a class nor been denied of a fundamental right also enjoys the protections of the Equal

Protection Clause.

The difference between the two turns upon scrutiny applied in reviewing the

government's conduct.  If the unequal treatment involves a suspect class or the denial of a

fundamental right the government's actions will be sustained only if it is suitably tailored to

5

serve a compelling state interest.  On the other hand, if no suspect class or fundamental right is involved the scrutiny given to the government's action is considered under the rational basis test [*Vision Church* at pp.1000-1001; *Srail v. Village of Lisle, Illinois*, 588 F.3d 940, 943 (7th Cir.2009); and *Smith v. City of Chicago*, 457 F.3d 643, 650-651 (7th Cir.2006)].

Jenkins need not be in a suspect class or have been denied a fundamental right in order to pursue an equal protection claim.  The amended complaint assumes neither applies to him and asserts that the rational basis test should be employed to scrutinize the Defendants' conduct.[3]

The holding in *Vukadinovich* seems to turn upon his failure to clearly plead discriminatory treatment rather than his failure to be a member of a suspected class [p.414]. Even if it can be read to require membership in a suspect class  as a prerequisite to an equal protection claim such a holding is at odds with *Vision Church*, *Srail* and *Smith*, each of which was decided well after *Vukadinovich*.

Assuming that Jenkins was not the member of a suspected class and the Defendants' actions did not deny him a fundamental right, the rational basis test is employed to determine whether the Defendants' conduct violated his rights under the Equal Protection Clause.  Under this test, Jenkins must prove:  1) he was treated differently from others similarly situated; 2) the difference in treatment was caused by his class membership; and 3) the difference in treatment was not rationally related to a legitimate state interest [*Srail* at p.943 and *Smith* at pp.650-651].

---

[3]  Although Jenkins does not claim membership in a "suspect" class in his amended complaint, a viable argument can be made that under Illinois law he is in a suspect class.  The General Assembly in Section 2-103 of the Act [775 ILCS § 2-103] gave an arrestee protections from discriminating treatment just like it has done for members of other minority groups.  In extending that statutory protection an argument can be made that persons like Jenkins are members of a suspected class.

6

The complaint alleges with the requisite factual details each of the elements necessary for Jenkins to prevail in an equal protection claim.

First, he alleges he was treated differently that similarly situated employees at the Center that had not been arrested for criminal conduct, but were nonetheless absent from work without notifying their absence.  He even identifies some of these people by name.  Contrary to the Defendants' contention, Jenkins asserts that each of these individuals had, like him, failed to report to work but was treated better.  These individuals, unlike Jenkins, had not been charged with criminal misconduct.

The "similarly situated inquiry" is flexible, common-sense and factual.  It asks "essentially, are there enough common features between the individuals to allow a meaningful comparison?" [*Humphries v. CBocs West, Inc.*, 474 F.3d 387, 405 (7th Cir.2007), aff'd 553 U.S. 442, 170 L.Ed.2d 864 (2008); and *Coleman  v. Donahue*, 667 F.3d 835, 846-847 (7th Cir.2012)].

While the comparatives must be comparable to the plaintiff in all material respects, they need not be identical [*Coleman* at 846].  The similarly situated requirements is satisfied "so long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless'" [*Coleman* at 846].

Whether a comparator is similarly situated is "usually a question for the fact-finder" [*Coleman* at pp.846-847; and *Srail* at p.945].  The similarly-situated inquiry "should not devolve into a mechanical, 'one-to-one mapping between employee'" [*Humphries* at 405; and *Coleman* at 847].

Second, the complaint alleges facts creating an inference that the difference in treatment was due to his arrest.  In this respect Jenkins states that:  1) prior to his arrest he enjoyed a good work record including a record of good attendance [¶9]; 2) his wife who also worked at the

7

Center was well liked by Center employees and administrators [¶10]; 3) following his wife's death many employees at the Center expressed in various ways outrage directed toward him because of her death [¶15]; and 4) Center officials were aware of the circumstances for his incarceration [¶14].

Finally, the amended complaint alleges that the Defendants' conduct in terminating him because of his arrest was not rationally related to a legitimate state interest.

State action survives the rational basis scrutiny if there is a rational relationship between the disparity in treatment and some governmental purpose [*Srail* at p.946; and *City of Chicago v. Shalala,* 189 F.3d 958, 605 (7th Cir.1999)].

While the state may have a legitimate interest not having someone accused of serious criminal misconduct supervising inmates at a correctional facility, it has established a policy codified in a statute and regulation addressing that interest.

Section 302.785 of the CMS Personnel Rules (a copy of that rule is attached), provides for the suspension without pay of an employee arrested or indicted for criminal misconduct if it "raises reasonable doubt concerning the employee's suitability for continued state employment in the present assignment or position."  Upon a finding of not guilty or the dismissal of the charge, the employee would be restored to either his position or a similar position.

This rule balances the concern identified above with a criminal defendant's presumption of innocence.

In view of the availability of that rule there is not a rational relationship between Jenkins' termination because of his arrest and a legitimate government interest.

**D)  Jenkins' Equal Protection Claim Is Not Based On Either His Rights Under The Act Or The "Personnel Code."**

While Jenkins' claims that as an arrestee he was in a definable class, his claim is not "based" upon either the Act or the "Personnel Code."

Each of those statutes was included in paragraph 27 of the amended complaint as evidence that the Defendants' conduct was not rationally related to a legitimate state interest. The reference to the Act is to identify a public policy of the state that arrestees are protected against discriminatory treatment.  The reference to the "Personnel Code" and CMS Rules is to identify the manner devised by the state for treating arrestees when their alleged criminal misconduct might implicate their suitability for employment.

**E)  The Defendants Are Not Entitled To Qualified Immunity.**

As a fallback argument, the Defendants contend they are shielded from Jenkins' claim by qualified immunity.

To support this argument they attempt to make two points neither of which is persuasive. First, they assert that there is no clearly established right of a state employee to be free from discipline following an arrest, incarceration and failure to report to work.  Second, they claim the Department's Rules of Conduct, which are facially neutral, require its employee to obey all laws and refrain from engaging in conduct that either reflects unfavorably or impairs the operations of the Department.  The failure to comply with those rules can lead to an employee's termination.

Government officials performing discretionary functions are generally shielded from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know [*Harlow v.*

9

*Fitzgerald*, 457 U.S. 800, 73 L.Ed.2d 396 (1982); and *Gruenberg v. Gempeler*, 697 F.3d 573, 578 (7ᵗʰ Cir.2012)]. (emphasis added)

As explained in *Butz v. Economou*, 438 U.S. 478, 57 L.Ed.2d 895 (1978), the qualified immunity doctrine is an attempt to balance two competing considerations. The first is the availability of a civil damages remedy for citizens wronged by the unlawful conduct of public officials. The second is "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority" [pp.504-506].

*Rakovich v. Wade*, 850 F.2d 1180 (7ᵗʰ Cir.1988), cautioned that a clearly established right "should not be defined so intricately that invariably guiding law never can be found" (p.1211).

In a qualified immunity analysis the salient question is whether the state of the law at the time of the alleged misconduct would have given a reasonable state actor fair warning that his actions were unlawful [*Hope v. Pelzer*, 536 U.S.730, 740-741, 153 L.Ed.2d 666 (2002); *Nobozny v. Podlesny*, 92 F.3d 446 (7ᵗʰ Cir.1996); and *McGreal v. Ostreu*, 368 F.2d 657, 683 (7ᵗʰ Cir. 2004)].

With respect to its first point, the Defendants are clearly wrong. At the time they put in place the steps leading to Jenkins' discharge, a reasonable public official was on notice that discharging a state employee because of his arrest record violated a clearly established statutory right. Section 2-103 of the Act prohibits an employer, including a state agency, from discharging an employee because of his arrest record.

With respect to its second point, the Department's Rules of Conduct do not shield the Defendants from Jenkins' claim. As explained earlier, to the extent that Jenkins' arrest may have implicated those rules, there was a process in place to address that situation in Rule 302.785 of

10

the Personnel Rules of CMS[4] [80 Ill.Admin. Code 302.785].  The Department with the approval

of the Director of CMS should have suspended Jenkins without pay pending a final court

determination of his innocence or guilt as a state employee.

In view of the foregoing the Defendants were on fair notice of the steps that should be

followed if Jenkins' arrest raised a reasonable question concerning his suitability for continued

employment with the Department.  Those steps did not include termination.

### III.  CONCLUSION

For the foregoing reasons, Bradley Jenkins requests that the Defendants' motion to

dismiss his amended complaint be denied.


Bradley Jenkins, Plaintiff

By:   s/ James P. Baker
      James P. Baker
      Bar Number: 0097802
      Baker, Baker & Krajewski, LLC
      415 South Seventh Street
      Springfield, Illinois 62701
      Telephone: (217) 522-3445
      Facsimile: (217) 522-8234
      E-mail:  jpb@bbklegal.com
      (Memorandums/ jenkinsb amend mtd opposition federal 101222)

---

[4] The Personnel Rules are promulgated by the Director of CMS pursuant to the provisions of
Section 8 of the "Personnel Code" [20 ILCS 415/8].

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lisa Cook
Attorney General's Office
500 South Second Street
Springfield, Illinois   62701
email:  lisa.cook@ilag.gov

By: s/James P. Baker_____
Baker, Baker & Krajewski, LLC